## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ALICE YOUNG AND STEVEN YOUNG** | **CIVIL ACTION** |
| **VERSUS** | **NO:  13-5246** |
| **IMPERIAL FIRE & CASUALTY INSURANCE COMPANY** | **SECTION: "S" (5)** |

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that Imperial Fire & Casualty Insurance Company's Motion for Summary Judgment (Doc. #21) is **DENIED** as to plaintiffs' building damages claim.

**IT IS FURTHER ORDERED** that Imperial's Motion for Summary Judgment (Doc. #21) is  **GRANTED** as to plaintiffs' contents coverage claim, and that claim is **DISMISSED WITH PREJUDICE**.

### BACKGROUND

This matter is before the court on a motion for summary judgment filed by defendant, Imperial Fire & Casualty Insurance Company, a Write-Your-Own ("WYO") Program carrier participating in the United States Government's National Flood Insurance Program ("NFIP") pursuant to the National Flood Insurance Act of 1968 ("NFIA"), as amended.  Imperial argues that it is entitled to summary judgment because plaintiffs, Alice and Steven Young, did not submit a timely Proof of Loss for building damages that complies with the requirements of the Standard Flood Insurance Policy ("SFIP"), and plaintiffs never submitted a Proof of Loss for their damaged contents.

On August 29, 2012, plaintiff's property in Slidell, Louisiana, which was covered by a flood insurance policy administered by Imperial, sustained flood damage as a result of Hurricane Isaac. Plaintiff's informed Imperial of the loss.  Imperial hired Fountain Group, which assigned Chad Little,

to adjust the claim.  After Little inspected the property, Imperial made advance payments to plaintiffs in the amount of $5,000 under the building coverage on October 4, 2012, and $5,000 under the contents coverage on October 10, 2012.

With a cover letter dated October 26, 2012, plaintiff's adjustor, Michaelson & Messinger, submitted a Proof of Loss for building damages on FEMA's form that was signed by Alice Young. It stated the policy number, coverage limit, the property address, and the date and cause of the loss. It also stated that plaintiffs were making a claim for $175,100, which is the policy limit of building coverage minus the deductible.  The actual cash value, full cost of replacement or repair and applicable depreciation were listed "undetermined."  The form was not dated.

On November 13, 2012, Daniel Onofrey, a public adjustor employed by Michaelson & Messinger sent an estimate of damages for the property to Imperial with a cover letter stating that it was an estimate of damages to supplement the Young's claim.  The report listed each portion of the house separately, and detailed the work that was needed, the square footage, and the removal and replacement costs.  The total amount of damages was estimated to be $260,635.83.

With a cover letter dated November 16, 2012, Onofrey sent another Proof of Loss for building damages on FEMA's form to Imperial.  The cover letter stated that it was a "revised Proof of Loss for the building portion of the above referenced claim."  It stated the policy number, coverage limit, the property address, and the date and cause of the loss.  It also stated that plaintiffs were making a claim for $175,100, which is the policy limit of building coverage minus the deductible. The Proof of Loss stated that the full cost of repair or replacement was $260,235.83, the amount listed in Onofrey's report.  Further, it stated that the actual cash value of the building and

2

applicable depreciation were undetermined. The form was dated October 13, 2012, and signed by Alice Young.  There was additional documentation attached.

On November 19, 2012, Little issued his final report.  He recommended that Imperial pay plaintiffs $52,437.37 for the damage to the building, and $13,161.85 under policy's the contents coverage.  On November 21, 2012, Imperial issued two checks to plaintiffs, $52,161.05 for their building losses, and $8,161.85 for their contents losses.

With a cover letter dated November 26, 2012, Nathan Michaelson of  Michaelson & Messinger submitted another Proof of Loss for building damages on FEMA's form to Imperial.  It stated the policy number, coverage limit, the property address, the date and cause of the loss.  It also stated that plaintiffs were making a claim for $175,100, which is the policy limit of building coverage minus the deductible. The Proof of Loss stated that the full cost of repair or replacement was $260,235.83, the amount listed in Onofrey's report.  Further, it stated that the actual cash value of the building and applicable depreciation were undetermined. The form was dated November 20, 2012, and signed by Alice Young.  There was no supporting documentation attached.

On November 27, 2012, Imperial informed plaintiffs that it rejected their October 13, 2012, Proof of Loss because it did not comply with the SFIP's requirements.  Specifically, Imperial stated: "We received a signed and sworn ACV proof of loss dated 10/13/2012 in the amount of $175,100.00.  A building estimate of damages was received without supporting documentation, including but not limited to, documentation for each item for direct physical loss due to this flood event noted above."

## ANALYSIS

### A.    Summary Judgment Standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. PROC. 56(c).  If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.  Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).  The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

### B.    Proof of Loss

The NFIP was established by the National Flood Insurance Act, 42 U.S.C. §§ 4001-4129 (2006), and is administered through the Federal Emergency Management Agency ("FEMA"). Wright v. Allstate Ins. Co. (Wright I), 415 F.3d 384, 386 (5th Cir.2005).  FEMA sets the terms and conditions of all federal flood insurance policies, and those polices must be issued in the form of a SFIP.  44 C.F.R. § 61.4(b); Gowland v. Aetna, 143 F.3d 951, 953 (5th Cir.1998).  SFIP provisions cannot "be altered, varied, or waived other than by the express written consent of the [Federal Insurance] Administrator" and must be strictly construed and enforced.  44 C.F.R. § 61.13(d);

4

Wright I, 415 F.3d at 387; Gowland, 143 F.3d at 953-954.  See Also Forman v. FEMA, 138 F.3d 543, 545 (5th Cir.1998).

Although SFIP proceeds can be issued by a WYO insurance provider directly to consumers, "[p]ayments on SFIP claims come ultimately from the federal treasury."[1] Wright I, 415 F.3d at 386; See also Gowland, 143 F.3d at 953.  Because the federal treasury is implicated in the payment of flood claims, the provisions of an SFIP must be strictly construed and enforced.  See Forman, 138 F.3d at 545.  Therefore, "[w]here federal funds are implicated, the person seeking those funds is obligated to familiarize himself with the legal requirements for receipt of such funds." Wright I, 415 F.3d at 388 (citing Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc., 104 S.Ct. 2218, 2226 (1984)).  Because the provisions of the SFIP are strictly enforced, "an insured's failure to provide a complete, sworn proof of loss statements, as required by the flood insurance policy, relieves the federal insurer's obligation to pay what otherwise might be a valid claim." Gowland, 143 F.3d at 953.

Under 44 C.F.R. Pt. 61, App. A(1), Art. VII(J)(4), the SFIP provides the following proof of loss requirement:

> Within 60 days after the loss,[2] send us a proof of loss, which is your statement of the amount you are claiming under the policy signed and

_____

[1] FEMA regulations for the NFIP provide that "loss payments" shall be payable from federal funds. 44 C.F.R. pt. 62, app. A, art. III(D)(2) ("Loss payments include payments as a result of litigation that arises under the scope of this Arrangement [between WYOs and the federal government], and the Authorities set forth herein.").  "Under the Appropriations Clause of the Constitution, '[m]oney may be paid out only through an appropriation made by law; in other words, the payment of money from the Treasury must be authorized by a statute.'" Wright I, 415 F.3d at 387 (quoting Office of Pers. Mgmt. v. Richmond, 496 U.S. 414, 424, 110 S.Ct. 2465, 2471, 110 L.Ed.2d 387, 399 (1990)).

[2] After Hurricane Isaac, FEMA extended the Proof of Loss deadline to 240 days after the loss. See FEMA W-13014, dated March 19, 2013.  Plaintiffs submitted all documents purporting to be their Proof of Loss well within this deadline.

sworn to by you, and which furnishes us with the following information:

a.  The date and time of loss;

b.  A brief explanation of how the loss happened;

c.  Your interest (for example, "owner") and the interest, if any, of others in the damaged property;

d.  Details of any other insurance that may cover the loss;

e.  Changes in title or occupancy of the covered property during the term of the policy;

f.  Specifications of damaged buildings and detailed repair estimates;

g.  Names of mortgagees or anyone else having a lien, charge, or claim against the insured property;

h.  Details about who occupied any insured building at the time of the loss and for what purpose; and

i.  The inventory of damaged personal property described in J.3. above.[3]

## 1.  Building Damage

It is undisputed that plaintiffs submitted three signed, sworn Proof of Loss for building damage on FEMA's forms to Imperial, and that plaintiffs' submitted a detailed estimate of damages from Onofrey.  Imperial argues that plaintiffs' submissions were inadequate because the detailed estimate was not submitted with a signed Proof of Loss form, and the estimate was not separately signed and sworn by plaintiffs.  Further, Imperial argues that the Onofrey estimate states that the amount of damages is $260,235.83, whereas the Proof of Loss states that the net claimed amount is $175,100, making it impossible to know the actual amount of plaintiffs' claim.

---

[3] Section J.3 requires the insured to: "Prepare an inventory of damaged property showing the quantity, description, actual cash value, and amount of loss.  Attach all bills, receipts, and related documents."

6

All of plaintiffs' Proof of Loss forms, taken together with Onofrey's estimate that was sent on November 13, 2012, constitute a complete Proof of Loss that complies with the SFIP. Plaintiffs submitted their first Proof of Loss for building damages, on FEMA's form, with a cover letter from Michaelson & Messinger on October 26, 2012. Then, on November 13, 2012, Onofrey submitted a detailed estimate of building damages, noting in his cover letter that it was to supplement plaintiffs' claim. Thereafter, plaintiffs sent a "revised Proof of Loss for the building portion of the above referenced claim" with a cover letter from Onofrey. This "revised Proof of Loss" stated that plaintiffs were making a claim for $175,100, which is the policy limit of building coverage minus the deductible, and that the full cost of repair or replacement was $260,235.83, the amount listed in Onofrey's report. Finally, plaintiffs submitted another Proof of Loss with a cover letter from Michaelson on November 26, 2012. This form also stated that plaintiffs were making a claim for $175,100, which is the policy limit of building coverage minus the deductible. The Proof of Loss stated that the full cost of repair or replacement was $260,235.83, the amount listed in Onofrey's report.

On November 27, 2012, Imperial acknowledged that it received a "signed and sworn ACV proof of loss dated 10/13/2012" from plaintiffs, and rejected it. Imperial claims that the Proof of Loss did not contain supporting documentation. However, Imperial did not acknowledge Onofrey's report, which specifically noted that it supplemented plaintiffs' claim.

Plaintiffs' Proof of Loss forms taken together with Onofrey's report clearly state that plaintiffs' cost of repair is the amount estimated by Onofrey's detailed report, $260,235.83, and that plaintiffs claim their policy limit on building coverage, minus the deductible, which is $175,100. Thus, plaintiffs presented a clear Proof of Loss for building damages that would permit Imperial to

evaluate their claim for their policy limit based on the damages and costs presented in Onofrey's estimate.  Therefore, Imperial's motion for summary judgment for failure to submit a Proof of Loss as to building damages is DENIED.

### 2.  Contents Damage

Imperial argues that it is entitled to summary judgment on plaintiffs' contents damages claim because plaintiffs failed to submit a timely proof of loss as required by the SFIP.  Plaintiffs do not contest Imperials assertion and do not submit any documentation to prove that they did submit a timely proof of loss for their contents damage that complies with the policy.  Therefore, Imperial's motion for summary judgment is GRANTED as to plaintiffs' contents damage claim, and that claim is DISMISSED WITH PREJUDICE.

**CONCLUSION**

**IT IS HEREBY ORDERED** that Imperial Fire & Casualty Insurance Company's Motion for Summary Judgment (Doc. #21) is **DENIED** as to plaintiffs' building damages claim.

**IT IS FURTHER ORDERED** that Imperial's Motion for Summary Judgment (Doc. #21) is **GRANTED** as to plaintiffs' contents coverage claim, and that claim is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this  15th  day of April, 2014.

MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE