UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ALICE T. YOUNG, ET AL.                       CIVIL ACTION

VERSUS                                       NUMBER: 13-5246

IMPERIAL FIRE AND CASUALTY                   SECTION: "S"(5)
INSURANCE COMPANY

## REPORT AND RECOMMENDATION

Before the Court is Plaintiffs' Motion for Partial Summary Judgment, which was referred to the undersigned United States Magistrate Judge by the District Judge to conduct a hearing and to submit a Report and Recommendation pursuant to Title 28 U.S.C. § 636. (Rec. docs. 50, 49). The Court has reviewed the record, including the parties' pleadings and attachments thereto, and has conducted a hearing, at which the parties, through counsel, were provided the opportunity to further argue their positions. (Rec. docs. 50, 55, 56). Considering all of the foregoing, the Court will recommend that the Motion be **GRANTED**, for the following reasons.

I.    **FACTS OF THE CASE**

This is a flood-damage case arising out of Hurricane Isaac, which struck southeast Louisiana on August 29, 2012. This action involves a claim made by homeowners, Alice T.

Young and Steven M. Young (the "Youngs"), for damages sustained to their home in Slidell, Louisiana, as a result of that hurricane. Defendant, Imperial Fire & Casualty Company ("Imperial"), issued a Standard Flood Insurance Policy ("SFIP") to the Youngs as the named insureds for their Slidell home, with policy effective dates of December 10, 2011 to December 19, 2012 and with Coverage A (building) policy limits of $177,100.00 and a deductible of $2,000. (Rec. doc. 21-10). Imperial is a write-your-own ("WYO") program carrier participating in the National Flood Insurance Program ("NFIP").

The parties agree that, following the storm, the Youngs submitted a claim for flood damages to Imperial, which sent an independent adjuster, Chad Little of Fountain Group Adjusters, LLC, to the Youngs' home to inspect the property and prepare an estimate of damages.

The remaining chronology of the claims process following Little's inspection and leading up to this litigation was previously recited by the District Judge in her Order and Reasons (Rec. doc. 37) denying in part and granting in part Imperial's Motion for Summary Judgment (Rec. doc. 21). The relevant facts as found by the District Judge are as follows:

> With a cover letter dated October 26, 2012, plaintiff's adjustor, Michaelson & Messinger, submitted a Proof of Loss for building damages on FEMA's form that was signed by Alice Young. It stated the policy number, coverage limit, the property address, and the date and cause of the loss. It also stated that plaintiffs were making a claim for $175,100, which is the policy limit of building coverage minus the deductible. The actual cash value, full cost of replacement or repair and applicable depreciation were listed "undetermined." The form was not dated.
>
> On November 13, 2012, Daniel Onofrey, a public adjustor employed by Michaelson & Messinger sent an estimate of damages for the property to Imperial with a cover letter stating

that it was an estimate of damages to supplement the Youngs' claim. The report listed each portion of the house separately, and detailed the work that was needed, the square footage, and the removal and replacement costs. The total amount of damages was estimated to be $260,635.83.

With a cover letter dated November 16, 2012, Onofrey sent another Proof of Loss for building damages on FEMA's form to Imperial. The cover letter stated that it was a "revised Proof of Loss for the building portion of the above referenced claim." It stated the policy number, coverage limit, the property address, and the date and cause of the loss. It also stated that plaintiffs were making a claim for $175,100, which is the policy limit of building coverage minus the deductible. The Proof of Loss stated that the full cost of repair or replacement was $260,235.83, the amount listed in Onofrey's report. Further, it stated that the actual cash value of the building and applicable depreciation were undetermined. The form was dated October 13, 2012, and signed by Alice Young. There was additional documentation attached.

On November 19, 2012, Little issued his final report. He recommended that Imperial pay plaintiffs $52,437.37 for the damage to the building, and $13,161.85 under the policy's contents coverage. On November 21, 2012, Imperial issued two checks to plaintiffs, $52,161.05 for their building losses, and $8,161.85 for their contents losses.

With a cover letter dated November 26, 2012, Nathan Michaelson of Michaelson & Messinger submitted another Proof of Loss for building damages on FEMA's form to Imperial. It stated the policy number, coverage limit, the property address, the date and cause of the loss. It also stated that plaintiffs were making a claim for $175,100, which is the policy limit of building coverage minus the deductible. The Proof of Loss stated that the full cost of repair or replacement was $260,235.83, the amount listed in Onofrey's report. Further, it stated that the actual cash value of the building and applicable depreciation were undetermined. The form was dated November 20, 2012, and signed by Alice Young. There was no supporting documentation attached.

3

> On November 27, 2012, Imperial informed plaintiffs that it rejected their October 13, 2012, Proof of Loss because it did not comply with the SFIP's requirements. Specifically, Imperial stated: "We received a signed and sworn ACV proof of loss dated 10/13/2012 in the amount of $175,100.00. A building estimate of damages was received without supporting documentation, including but not limited to, documentation for each item for direct physical loss due to this flood event noted above."

*Id.*, at 2-3. Following Imperial's denial of the supplemental claim described above, the Youngs filed the instant suit against Imperial.

## II. THE PRESENT MOTION

The Youngs now move for partial summary judgment, asking this Court to interpret the SFIP to determine whether they "are entitled to pursue their claim on an actual cash value basis." The Motion, therefore, seeks an answer to a question of law, *i.e.*, whether the Policy allows them to elect to proceed in this lawsuit as ACV claimants, rather than being forced to proceed as claimants seeking replacement cost value only.[1]

Imperial responds in Opposition, raising a number of arguments against the Youngs' Motion. First, Imperial suggests that the plaintiffs' Motion is untimely, based upon the District Judge's scheduling order. Second, it argues that because the Youngs pleaded only a breach of contract cause of action in their Original Complaint, as opposed to pleading a specific cause of action stating unequivocally that they intended to proceed on an ACV basis, they are somehow barred from so proceeding now. Third, Imperial argues that summary judgment is an inappropriate tool to be employed at this stage of the

---

[1] This Court very recently recommended the granting of a similar Motion for Partial Summary Judgment seeking identical relief based on identical policy language. *See Bowie v. American Security Insurance Co.,* No. 13-CV-5698-MVL-MBN, Rec. doc. 42.

4

proceedings, because "the designation of this claim as payable as RCV versus ACV is simply an element of proof that the Plaintiffs will bear at trial and not a legal claim that can be decided on summary judgment." (Rec. doc. 55, at 11). Finally, they argue that the plain language of the SFIP requires that Plaintiffs "timely notify Imperial of their decision to elect to proceed on an Actual Cash Value basis settlement within 180 days of the loss as required by Article VII(V)(2)(d)." *Id.*, at 3.

### III. LAW AND ANALYSIS

#### A. Standard of Review

Summary judgment is appropriate if the moving party can show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). It is well established, and no party herein disputes, that the interpretation of a contract, including the SFIP, is a question of law that properly may be determined on a motion for summary judgment. *See, e.g.*, *Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386, 390 (9th Cir.), *cert. denied*, 531 U.S. 927 (2000); *Sodowski v. NFIP*, 834 F.2d 653 (7th Cir. 1987), *cert. denied*, 486 U.S. 1043 (1988); *Atlas Pallet Inc. v. Gallagher*, 725 F.2d 131 (1st Cir. 1984); *Smoak v. Ind. Fire Ins. Co.*, 874 F.Supp. 110 (D.S.C. 1994), *vacated on other grounds*, 180 F.3d 172 (4th Cir. 1999); *Rockland Fed. Credit Union v. Witt*, 853 F.Supp. 14 (D.Mass. 1994).

> Indeed, when the contract is unambiguous on its face, the operation of the parol-evidence rule will preclude the introduction of outside evidence to dispute its terms and summary judgment is particularly appropriate. Thus, when there is no genuine issue as to the meaning of a contract, the mere assertion that ambiguity or divergent intent exists will not prevent summary judgment from being entered.

10B Wright & Miller, Federal Practice & Procedure, § 2730.1 (3d ed.)

**B. Analysis**

*1. Timeliness of the Motion*

Imperial argues in its Opposition that the Youngs' Motion was untimely filed because when the District Judge continued the trial of this matter on April 24, 2014, she did not simultaneously extend the deadline for filing dispositive motions.  Notably, Imperial does not argue – or even suggest – that it has been prejudiced by this supposedly late filing, it merely complains that the Youngs' filing was technically outside the deadline imposed by the previous scheduling order in the case.  (Rec. doc. 16).

This Court was not present at the scheduling conference referenced by Imperial in its Memorandum and does not know whether the issue of the dispositive motion deadline was raised or discussed.  However, the Court can reasonably infer from the fact that the District Judge specifically granted Plaintiffs leave to file the Motion and referred the Motion here on a Report and Recommendation basis (rec. doc. 49), that the District Court intended this Court to address the merits of the Motion.  Moreover, because the Motion itself addresses a specific question of law, *i.e.*, interpretation of contract language, this Court finds that the interests of judicial economy and efficiency are best served by a pretrial determination of the question raised in Plaintiffs' Motion.  Accordingly, and in the absence of any suggestion of prejudice to Imperial, the Court finds the Motion is properly before the Court and the issues raised therein are ripe for decision.

2. *Plaintiffs' Failure to Plead a Cause of Action for ACV Recovery*

Before reaching the merits, the Court will briefly address the two additional procedural grounds for denial of the Youngs' motion that Imperial suggests in its Opposition. First, Imperial complains that the Youngs "failed to raise a cause of action for a judgment payable on an actual cash value basis as defined by their SFIP" and, as such, should be barred from seeking a ruling from the Court now that they are entitled to so proceed under that SFIP. (Rec. doc. 55, at 10). It further argues that "this motion is the first indication that Imperial has ever received from the Plaintiffs that they now seek to have their claim made payable on an actual cash value basis." *Id.* Neither of these arguments is convincing.

The Youngs filed a Complaint stating a cause of action against Imperial for breach of contract – that contract being the SFIP. The present Motion simply asks the Court to interpret a provision of that contract that will affect, among other things, the nature of proof at trial and the limit of potential damages available to them if they prevail at trial. Nothing in the contract itself or in the Federal Rules of Civil Procedure required the Youngs to plead such a specific cause of action as that suggested by Imperial and, notably, Imperial has cited no authority for that assertion. Furthermore, Imperial's statement that this Motion is the first time the Youngs presented an ACV claim in this matter is incorrect.

As noted above, The District Judge previously found that the Youngs had submitted a proof of loss to Imperial dated October 13, 2013. (Rec. doc. 21). Imperial rejected that proof of loss, but in doing so stated: "We received a <u>signed and sworn ACV proof of loss</u> dated 10/13/2012 in the amount of $175,100.00. A building estimate of damages was received without supporting documentation, including but not limited to, documentation

7

for each item for direct physical loss due to this flood event noted above." (Rec. doc. 21-14) (emphasis added). Having previously stated that it received an "ACV proof of loss" from the Youngs, Imperial cannot now claim that this Motion is the first indication that Plaintiffs were making an ACV claim.

Finally, Imperial suggests that the relief sought by the Youngs in this Motion is inappropriate for summary judgment, because their request "does not provide a means by which the Court will be able to determine the viability of claims or defenses pre-suit to allow for the streamlining of this case." (Rec. doc. 55). Stated differently, because the "motion does not address liability or proof of damages," it is said to be improper. *Id.* Notwithstanding that this second statement fails to appreciate the practical impact of a ruling granting or denying the Youngs' Motion, this Court believes the relief sought by the Youngs is exactly the type that is well-suited to pretrial summary adjudication.

As noted earlier, interpretation of an insurance policy is a question of law for the Court that is properly determined by summary judgment. *See, e.g.*, *Flick*, 205 F.3d at 390. That is the only relief sought by the Youngs in their Motion and Imperial has cited no authority of any kind to support its contention that such a request for relief is improper. And, contrary to Imperial's suggestion otherwise, there can be no debate that the outcome of the Youngs' Motion will affect <u>both</u> Imperial's potential liability and the "proof of damages" that the Youngs will be required to marshal at trial.

For instance, if the Youngs are considered ACV claimants, they are, by the straightforward terms of the contract, unable to recover "recoverable depreciation"

withheld by Imperial.[2] This is because ACV is defined in the SFIP as "[t]he cost to replace an insured item of property at the time of the loss, <u>less the value</u> of its physical depreciation." (Rec. doc. 21-3, at 3) (emphasis added). The outcome of this Motion, therefore, will determine the "ceiling" for the Youngs' damages claim against Imperial.

In addition, the outcome of the Motion may well affect the type of evidence that the District Judge considers at trial. An issue often arises in flood cases whether an insured/plaintiff who has been paid by his insurer and has completed repairs should be limited to presenting receipts or invoices as the sole evidence to prove entitlement to damages above and beyond what was previously paid by the insurer. Depending upon the facts of a particular case, the distinction between RCV and ACV may be dispositive in determining whether a claimant can rely upon other types of evidence, such as estimates and testimony, to prove a claim for additional damages. A similar issue was addressed recently by another section of this Court in *Stevens v. Allstate*,[3] and the analysis therein is particularly instructive here.

The *Stevens* Court recognized that there are circumstances in ACV flood cases where estimates and testimony are appropriate elements of proof, even after repair work has been completed: "Precedent makes clear that it is possible for the [plaintiffs] to rely on an estimate, as well as evidence and testimony, in establishing the actual cash value of the damaged part of their house." *Id.*, at *5. That Court discussed a number of cases in this Circuit and District which, taken together, stand for the proposition that estimates and

---

[2] The Youngs can no longer make a claim for the recoverable depreciation withheld by Imperial because more than 180 days has passed since the date of loss. *See* Rec. doc. 21-3, at 19, discussed in more detail *infra* at section III(B)(3).
[3] ___ F. Supp. 2d ___, 2014 WL 1779478 (E.D. La. May 5, 2014).

testimony may be admissible at trial even after an insured proceeding on an ACV basis has completed repairs to his or her home.  *See, e.g.*, *Williams v. Allstate Indemnity Co.*, 359 Fed.Appx. 471, 474 (5th Cir. 2009); *Lacroix v. State Farm Fire & Casualty Co.*, No. 09–CV-0609, 2010 WL 2265577 (E.D. La. June 2, 2010) (Duval, J.); *Hillard v. Bankers Specialty Insurance*, No. 13–CV-0200, 2013 WL 5961104, *2 (E.D. La. Nov. 7, 2013) (Lemmon, J).

Whether estimates and testimony (as opposed to receipts or invoices alone) are ultimately considered at trial by the District Judge in this case will depend upon particular facts and circumstances of the Youngs' claim that are not currently before the Court.  However, the recent *Stevens* decision and the cases cited by the Court therein do establish that an ACV claimant in a flood case may well be entitled to present types of evidence at trial different than those typically allowed to prove a pure RCV claim for additional funds.  Accordingly, this Court finds that the pretrial determination of the issue raised in Plaintiffs' Motion will assist both the parties and the trial court and will streamline the presentation of the case at trial.  It therefore turns to consideration of the merits of the Motion.

    *3.  Interpretation of the RCV Loss Settlement Provisions of the SFIP*

The SFIP issued by Imperial and all disputes arising from the handling of any claim under it are governed by the flood insurance regulations issued by Federal Emergency Management Agency ("FEMA"), the National Flood Insurance Act of 1968, as amended (42 U.S.C. § 4001, et seq.) and Federal common law.  *See* 44 C.F.R. Pt. 61, App. A(1), Art. IX.  Any interpretation of those regulations by FEMA also governs, as long as that interpretation is not inconsistent with the regulations or plainly erroneous.  *Stevens v. Allstate Ins. Co.,* \_\_\_\_\_ F. Supp. 2d \_\_\_, 2014 WL 1779478, at *3 (E.D. La. May 5, 2014)(citing *Worthen v. Fid.*

*Nat'l Prop. & Cas. Ins. Co.*, 463 Fed.Appx. 422, 426 (5th Cir. 2012)).  SFIPs must be strictly construed and enforced.  *Id.* (citing *Gowland v. Aetna*, 143 F.3d 951, 954 (5th Cir.1998)).

"Although federal law governs SFIPs, 'general principles of state insurance law may be useful' in interpreting them."  *Id.* (quoting *Worthen*, at 425).  Those general principles include:

> (1) if the language of a policy is clear and unambiguous, it is accorded its natural meaning; (2) if the meaning of a policy provision is susceptible to different constructions, the one most favorable to the insured prevails; (3) insurance contracts are to be reasonably construed in accordance with the objective and intent of the parties; (4) in determining the most reasonable construction of contested provisions, the court may draw from the provisions, the policy as a whole, and the apparent objectives of the parties in entering the contract; and (5) in the end, if the meaning of the policy terms remains unclear, the policy is generally construed in the insured's favor to promote the policy's objective of providing coverage.

*Id.* (quoting *Worthen*, at 425-26).

In addition to these principles, a court interpreting the language of the SFIP should be further guided by the well-established notion that words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning.  *See* La. Civ Code art. 2047; *Peterson v. Schimek*, 98-1712, p. 5 (La. 3/2/99), 729 So.2d 1024, 1028-29.  Likewise, an insurance contract should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion.  *Carrier v. Reliance Ins. Co.*, 99-2573, p. 11 (La.4/11/00), 759 So.2d 37, 43; Peterson, 729 So.2d at

1029. The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent. *Succession of Fannaly v. Lafayette Ins. Co.*, 01-1355, p. 4 (La.1/15/02), 805 So.2d 1134, 1138; *Peterson*, 729 So.2d at 1029.

It is undisputed in this case that the Youngs are <u>eligible</u> to proceed under subsection (a) of the Replacement Cost Loss Settlement provisions of the SFIP; the question before the Court now is whether they <u>must</u> so proceed. In *Stevens,* the Court observed that this particular provision "is something of a misnomer in that it incorporates both a 'replacement cost' approach and an 'actual cash value' approach in settling claims." *Id.*, at *3. The relevant language of the Replacement Cost Loss Settlement provision is as follows:

> The following loss settlement conditions apply to a single-family dwelling . . .
>
> (a) [The insurer] will pay to repair or replace the damaged dwelling after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:
>
>     (1) The building limit of liability ...;
>
>     (2) The replacement cost of that part of the dwelling damaged, with materials of like kind and quality and for like use; or
>
>     (3) The necessary amount actually spent to repair or replace the damaged part of the dwelling for like use.
>
>         . . . .

> (c)  When the full cost of repair or replacement is more than $1,000, or more than 5% of the whole amount of insurance that applies to the dwelling, [the insurer] will not be liable for any loss under [subsection (a) ] above ... unless and until actual repair or replacement is completed.
>
> (d)  [The insured] may disregard the replacement cost conditions above and make claim under this policy for loss to dwellings on an actual cash value basis. [The insured] may then make claim for any additional liability according to [subsections (a) and (c) ] above, provided [the insured] notif[ies the insurer] of [their] intent to do so within 180 days after the date of loss.

In *Stevens*, as in this case, the insurer argued that the insured was limited to recovery under subsection (a) above, *i.e.*, the "pure" RCV loss settlement conditions. In *Stevens*, that insurer, in arguing for the application of subsection (a), ignored the other applicable subsections, (c) and (d). *Id.*, at *4. Here, Imperial acknowledges these provisions and concedes that they could have applied to the Youngs' claim at some point in time, but it argues that the language of subsection (d) imposes upon the Youngs a requirement that they "notify [Imperial] of their intent to [proceed as an ACV claimant] within 180 days of the loss," which they did not do. (Rec. doc. 55, at 12).

The sole remaining question before the Court, then, is whether subsection (d) requires an insured (1) to notify the insurer of its election to proceed on an ACV basis <u>and</u> (2) make that notification within 180 of the loss. This Court believes that no reasonable person could read subsection (d) to impose such requirements.

Imperial has not pointed to a single case, statute, regulation or FEMA guidance that supports its reading of subsection (d). That is not surprising to this Court, given the plain

13

language of the provision. In fact, the *Stevens* Court's interpretation of that language supports this Court's conclusion that the 180-day deadline set forth in subsection (d) actually applies to a different election available to the insured, namely an election to seek from the insurer payment of recoverable depreciation costs withheld by the insurer only <u>after</u> the insured had earlier elected to proceed on an ACV basis.

Not surprisingly, the Youngs rely rather heavily on the *Stevens* case in support of their position herein. In response, Imperial suggests that because "[t]he *Stevens* Court did not address Article VII(V)(2)(d)'s time requirement . . . it is not helpful to Plaintiffs' argument." (Rec. doc. 55, at 13). But, the *Stevens* Court <u>did</u> address the time requirement of subsection (d) and it did so in way that undermines the interpretation offered by Imperial.

Specifically, the *Stevens* Court noted:

> Under subsection (d), an insured may make a claim and receive the actual cash value of the damaged property immediately after the damage occurs. If the insured does not intend to repair or replace that property, the insurer's liability will have been entirely resolved. If the insured does intend to repair or replace it (<u>and notifies the insurer of that intent within 180 days</u> after the damage occurs), the insured may then make <u>another</u> claim for the difference between the actual cash value, under subsection (d), and the repair or replacement cost, under subsection (a). Although Allstate may later become liable to the Stevens for the replacement cost, it is currently only liable to them for the actual cash value.

*Stevens*, ___ F. Supp. 2d at ___, 2014 WL 1779478, at *4 (emphasis added). There are two particularly important observations here.

First, dispositive of this Motion is that the 180-day time limitation applies to a <u>second</u> election by the insured to seek payment of any recoverable depreciation that may have

14

been withheld by the insurer. Such a "holdback" of recoverable depreciation would only occur pursuant to an ACV payment by the insurer after the insured made its initial election under subsection (d) to "disregard" the RCV loss settlement provisions and proceed on an ACV basis. Second, unless and until the insured actually completes repairs, the insurer is "only liable to [the insured] for the actual cash value" of the claim. *Id.*

Far from ignoring the "time requirement" of subsection (d) as Imperial suggests, the *Stevens* Court actually interpreted it to mean exactly what the Youngs suggests it means in their Motion. This Court agrees with the *Stevens* Court's interpretation of subsection (d) and in fact can conceive of no other interpretation, including Imperial's, that would not amount to a "perversion of the words" of the provision. *Succession of Fannaly,* 805 So.2d at 1138.

While Imperial protests that it "has never considered nor does it now consider the Plaintiffs' flood claim to be payable on an Actual Cash Value basis," the Court does not believe that the manner in which Imperial viewed the claim is material to the Youngs' right to proceed on an ACV basis. The SFIP clearly allows the insured to make the ACV election themselves, with no input or approval from the insurer. The Youngs have made it manifestly clear they have made that election and the contract upon which they sue herein allows them to do so.

Accordingly, the Youngs are entitled to proceed in this matter on an ACV basis.

**IV. RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that Plaintiffs' Motion for Partial Summary Judgment be **GRANTED.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in the Magistrate Judge's Report and Recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996)(en banc).

New Orleans, Louisiana, this   1st   day of         July        , 2014.

MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE